UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER CRUMMEL,

    Plaintiff,

v.

MAPLE HILL AUTO GROUP,

    Defendant.
_____/

Case No. 1:22-cv-1210

Hon. Hala Y. Jarbou

**OPINION**

Plaintiff Heather Crummel brings this action against her former employer, Defendant Maple Hill Auto Group. Before the Court is Defendant's motion for judgment on the pleadings (ECF No. 10). For the reasons herein, the Court will grant the motion in part and deny it in part.

**I. BACKGROUND**

Defendant is a car dealership located in Kalamazoo. According to the complaint, Plaintiff began working for Defendant as a Service Advisor in October 2017. (*See* Compl. ¶ 7.) On January 31, 2019, she was hospitalized for ten days due to a serious blood clot, and she remained off work until February 25, 2019, per her physician's orders. (*Id.* ¶ 10.)

On February 3, while still in the hospital, Plaintiff told Defendant's human resources representative, Ramona Vandenberg, that she would need medical leave to receive treatment for the blood clot. The following day, Defendant approved Plaintiff's request. Plaintiff eventually resumed working on February 25.

On March 11, 2019, Plaintiff began "hemorrhaging" and returned to the hospital for treatment. (*Id.* ¶ 14.) She remained off work until April 10, 2019, due to treatment and her physician's orders. She used medical leave during that period of absence from work.

While undergoing treatment, Plaintiff learned that she had "pre-cancerous" cells in her uterus. (*Id.* ¶ 15.) Her physician recommended that she undergo a hysterectomy when her health stabilized.

Plaintiff returned to work on April 10, 2019. She initially worked on a part-time basis due to restrictions imposed by her physician. On May 7, 2019, she returned to work on a full-time basis without restrictions.

Plaintiff's physician scheduled her for a hysterectomy that would take place on November 19, 2019. Plaintiff told Defendant about her upcoming surgery and her need for medical leave.

In October and November 2019, Plaintiff trained a co-worker to fill in for Plaintiff while she was on leave. On November 1, Defendant congratulated Plaintiff for being "first in sales" among the "CDK Service Team" for "inspection usage," and for being a "close second" in sales for "sales dollars off inspections." (*Id.* ¶ 22.)

Plaintiff underwent a hysterectomy procedure on November 18, 2019, but her physicians were unable to complete the procedure due to complications. She was scheduled for a second, more invasive, hysterectomy procedure that would take place on December 19, 2019. In the meantime, she continued her leave, communicating with her supervisor, Linda Avery, on a regular basis.

On November 20, 2019, while Plaintiff was still on leave, Avery sent her a text message stating that it was Avery and Vandenberg's opinion that they "would just not have the surgery and see what happens [because] these days female parts cancer is being cured daily [and] most people are living through it." (*Id.* ¶ 26.)

On December 9, 2019, Plaintiff told Defendant that she would need continued medical leave because she would be undergoing another surgery on December 19, 2019. She informed

Defendant that, according to her physician, she would likely be able to return to work at the end of January 2020.

Plaintiff underwent the second hysterectomy procedure as scheduled on December 19, 2019, and continued taking medical leave. She communicated regularly with Avery about her health and status. On January 2, 2020, Plaintiff received a letter from Defendant dated December 26, 2019. Defendant has attached a copy of this letter to its motion for judgment on the pleadings. (*See* Termination Letter, ECF No. 10-2.) The Court can consider the letter without converting Defendant's motion into one for summary judgment because the letter is mentioned in the complaint and is "central to the claims contained therein[.]" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The letter informed Plaintiff that, although she sought to extend her FMLA leave, she had already exhausted her twelve weeks of leave and she was not eligible to extend her leave any further. (Termination Letter, PageID.82.) It stated that Defendant needed a permanent employee in her position, so Defendant would be "recruiting for a replacement" for the position. (*Id.*) If Plaintiff returned to work before Defendant filled the position, then she could return to her position. If not, then she would be eligible to apply for any open positions. (*Id.*)

Immediately upon receiving the letter, Plaintiff contacted Avery and said that she could return to work on January 20, per her physician's orders. However, Avery told Plaintiff that Defendant had already hired someone to fill her position. Consequently, Plaintiff lost her position, even though the new employee did not start working for Defendant until January 20, 2020.

Based on the foregoing, Plaintiff claims that Defendant retaliated against her in violation of the Family and Medical Leave Act ("FMLA") for taking medical leave. Plaintiff also claims that Defendant violated the Americans with Disabilities Act ("ADA") and Michigan's Persons

with Disabilities Civil Rights Act ("PWDCRA") by discriminating against her because it perceived her as disabled or by retaliating against her for requesting an accommodation for a disability.

Defendant seeks judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

The Court evaluates a motion for judgment on the pleadings using the same standards that apply to a Rule 12(b)(6) motion to dismiss the complaint. *Myers v. City of Centerville*, 41 F.4th 746, 757 (6th Cir. 2022). Thus, the Court should deny the motion where the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard . . . is not akin to a probability requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). "[A] statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008).

When considering Defendant's motion, the Court must "construe the complaint in the light most favorable to the plaintiff[.]" *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). But the Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

### A. FMLA

"The FMLA provides eligible employees with the right to take up to 12 weeks of leave per year when the employee suffers from a 'serious health condition that makes the employee unable to perform the functions' of her job.'" *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 572 (6th Cir. 2023) (quoting 29 U.S.C. § 2612(a)(1)(D)). There are two types of FMLA claims: interference claims and retaliation claims. "The interference theory applies when an employer attempts to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' any FMLA leave rights." *Id.* (quoting 29 U.S.C. § 2615(a)(1)).

In contrast, a retaliation claim "arises when an employer takes an adverse employment action against the employee for exercising or attempting to exercise a right protected by the FMLA." *Milman v. Fieger & Fieger, PC*, 58 F.4th 860, 866 (6th Cir. 2023). It is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful [by the FMLA]." 29 U.S.C. § 2615(a)(2). Courts interpret this provision as prohibiting retaliation against employees who engage in protected activity under the FMLA. *See Milman*, 58 F.4th at 866.

#### 1. Stating a Claim

Defendant argues that Plaintiff does not state a claim under the FMLA because she received the twelve weeks of medical leave to which she was entitled under the FMLA and did not return to work before Defendant terminated her. In other words, the complaint provides sufficient detail to calculate the amount of leave that Plaintiff received. She alleges that she was on medical leave for the following time periods in 2019: February 4 to February 25 (three weeks); March 11 to April 10 (four and a half weeks); and November 18 to December 26 (five and a half weeks). (*See* Compl. ¶ 13.) In addition, Plaintiff alleges that she worked part-time from April 10 to May 7,

5

2019, which would add another week of leave even assuming Plaintiff worked for as much as three-quarters of that time. Thus, by December 26, 2019, Plaintiff had taken a total of approximately fourteen weeks of medical leave. Because Defendant terminated Plaintiff after she exhausted her available FMLA leave, Defendant argues that it did not interfere with her rights under that statute.

Plaintiff responds that she does not assert an interference claim. Instead, she asserts a retaliation claim. She contends that Defendant terminated her in retaliation for the fact that she exercised her right to take leave under the FMLA.

Defendant argues that the retaliation provision in § 2615(a)(2) is "not a good fit" for Plaintiff's retaliation claim because that provision refers to "opposing any practice made unlawful" by the FMLA. (Def.'s Reply Br. 2, ECF No. 19.) Plaintiff does not allege that she opposed any unlawful practice by Defendant.

However, the Court of Appeals has made clear that exercising the right to medical leave under the FMLA is protected conduct, and that an employer cannot retaliate or discriminate against an employee who exercises that right. *See Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 401 (6th Cir. 2008) (concluding that "the FMLA . . . prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave"); *accord Milman*, 58 F.4th at 866. Defendant apparently disagrees with that interpretation of the FMLA, but this Court is bound by established precedent from the Court of Appeals.

In short, Plaintiff does not assert an interference claim; she asserts a retaliation claim. Defendant argues that Plaintiff did not engage in protected conduct under the FMLA, but that argument is meritless. Plaintiff exercised her right to medical leave. The FMLA prohibits Defendant from retaliating against an employee for exercising that right.

### 2. Statute of Limitations

Next, Defendant argues that Plaintiff's FMLA claim is untimely. Plaintiff filed her complaint on December 21, 2022, almost three years after her termination on January 2, 2020. The default statute of limitations period for FMLA claims is two years. 29 U.S.C. § 2617(c)(1). This period is extended to three years if the violation was "willful." 26 U.S.C. § 2617(c)(2). By extending the limitations period through this provision, "Congress intended to draw a significant distinction between ordinary violations and willful violations." *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) (discussing an analogous statute, the Fair Labor Standards Act). Plaintiff argues that Defendant's conduct was willful, but Defendant responds that her allegations do not plausibly support that contention.

"[T]he central inquiry in determining whether a violation of the FMLA is willful is 'whether the employer intentionally or recklessly violated the FMLA.'" *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014) (quoting *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir. 2005)). "A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited." *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002). Plaintiff "must do more than make the conclusory assertion that a defendant acted willfully." *Crugher*, 761 F.3d at 617 (quoting *Katoula v. Detroit Ent., LLC*, 557 F. App'x 496, 498 (6th Cir. 2014)). Plaintiff "must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Id.* (quoting *Katoula*, 557 F. App'x at 498) (internal quotation marks omitted).

Here, there are no facts in Plaintiff's complaint from which to plausibly infer willfulness by Defendant. At best, the allegations "only establish a causal connection between [Plaintiff's] termination and [her] FMLA leave." *See Crugher*, 761 F.3d at 617. But that connection is not sufficient. *See id.* Indeed, Plaintiff took medical leave on several occasions throughout 2019, and

7

Defendant ultimately permitted her to take more leave than the FMLA required. Defendant then hired a new employee to replace Plaintiff when it was clear that she was still not ready or able to return to work. If anything, Plaintiff's allegations indicate that Defendant was "generally receptive to [Plaintiff's] use of FMLA leave." *See Craddock v. FedEx Corporate Servs., Inc.*, No. 20-5655, 2021 WL 4127078, at *4 (6th Cir. Aug. 23, 2021) (finding that a complaint failed to allege facts from which to infer willfulness for an FMLA claim).

Plaintiff points to her assertion in her complaint that Defendant acted "willfully" (Compl. ¶ 49), but that conclusory assertion does not support an inference of willfulness.

Plaintiff also references the text message from Avery, her supervisor, in which Avery expressed her opinion that she and Vandenberg would not undergo a hysterectomy. But that personal opinion says little, if anything, about their perception of Plaintiff's decision to take medical leave. The text message did not express any opinion about that subject. Indeed, Defendant subsequently permitted Plaintiff to take medical leave for the second hysterectomy and then it allowed her to remain on leave for up to two weeks beyond what the FMLA required.

In addition, Plaintiff notes that the letter from Defendant repeatedly referred to her use of FMLA leave. Plaintiff argues that these references suggest a retaliatory animus. But the letter made these references in the context of explaining that Plaintiff had exhausted her leave. Those references do not suggest a retaliatory motive, let alone a willful violation of the FMLA.

Plaintiff further argues that whether she had exhausted her leave at the time of her termination is irrelevant to whether she has pleaded a retaliation claim, citing *Edgar v. JAC Products, Inc.*, 443 F.3d 501 (6th Cir. 2006). Specifically, Plaintiff quotes the following passage from that opinion:

> the purposes of the FMLA would be frustrated if an employer could escape from all liability for a retaliatory discharge under [29 U.S.C.] § 2617(a)(1) simply

8

>       because it has shown that the employee could not have returned to work after
>       having taken FMLA leave.

*Id.* at 513 (quoting *Rogers v. AC Humko Corp.*, 56 F. Supp. 2d 972, 977-87 (W.D. Tenn. 1999)).

That passage does not apply here. There, the Court of Appeals was evaluating the appropriate damages remedy for an FMLA violation. *See id.* It held that, "in a retaliation case, after-acquired evidence of an employee's inability to return to work cannot be used to shield a defendant from liability, but should be considered in determining the appropriate remedy for the FMLA violation." *Id.* However, the issue here is whether Plaintiff has pleaded sufficient facts to state a willful violation. *Edgar* does not address that issue. Moreover, *Edgar* is distinguishable because Plaintiff's case does not involve "after-acquired evidence" of her inability to return to work. Defendant was aware that Plaintiff could not return to work when her FMLA leave ended and when it terminated her. *See id.* (distinguishing cases where "the medical information known to the employer prior to the termination decision shows that the employee could not return within 12 weeks" from cases like *Edgar*, where the employer learns about the inability to return to work *after* the termination decision). Thus, Plaintiff's reliance on *Edgar* is not persuasive.

In short, the two-year statute of limitations applies, meaning that Plaintiff's FMLA claim is time-barred.

### B. ADA

Plaintiff asserts that Defendant discriminated against her because of her disability, failed to accommodate her, and retaliated against her for requesting an accommodation. Title I of the ADA prohibits employers from discriminating against individuals because of a disability. 42 U.S.C. § 12112(a). Failing to offer a reasonable accommodation to an otherwise qualified employee is a form of disability discrimination. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862,

9

868 (6th Cir. 2007).  The ADA also prohibits retaliation against an individual who "has opposed any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).

Defendant argues that Plaintiff does not state an ADA claim because she fails to allege that she was disabled within the meaning of the ADA.  The ADA defines "disability" in three ways: "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment."  42 U.S.C. § 12102(1)((A)-(C).  Plaintiff relies on the second and third definitions—a record of an impairment and being regarded as having an impairment.

Defendant argues that Plaintiff was not disabled because she faced only temporary, short-term impairments.  After Plaintiff experienced a blood clot on February 4, 2019, she received treatment and returned to work on February 25.  After Plaintiff experienced hemorrhaging on March 11, 2019, she received treatment and then returned to work full time, without restrictions, on May 7, 2019.  On November 18, 2019, she underwent a hysterectomy to remove precancerous cells and then remained in the hospital until after her second hysterectomy procedure on December 19, 2019.  That procedure presumably resolved Plaintiff's long-term issues.  Although she needed time to recover from surgery, it appears that she did recover.  In fact, she told Defendant that she was able to work on January 20.

Defendant relies on older cases indicating that short-term, temporary restrictions generally do not qualify as disabilities.  *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 582 (6th Cir. 2007) ("[T]he Supreme Court and this circuit have recognized that an impairment generally must be 'permanent or long-term' to qualify as substantially limiting under the ADA.") (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002)); *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996) ("Generally, short-term, temporary restrictions are not substantially limiting.").

10

But in each of those cases, courts were interpreting older versions of the ADA and associated regulations that are no longer in effect. Congress amended the ADA in 2008. Those amendments "expressly overruled" the Supreme Court's holding that an impairment must be permanent or long term in order to qualify as a disability. *Spence v. Donahoe*, 515 F. App'x 561, 569 (6th Cir. 2013). The current regulations interpreting "substantially limits" state that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." *Id.* § 1630.2(j)(1)(ix) (2012). The Court of Appeals "ha[s] yet to comprehensively discuss the scope of temporary impairments under the broadened definition." *Hunt v. Monro Muffler Brake, Inc.*, 769 F. App'x 253, 257 (6th Cir. 2019). Defendant does not address the more recent definition of disability in its briefing, and the Court declines to do so on its behalf.

Defendant makes other arguments regarding whether Plaintiff has alleged a "record of impairment" or whether Defendant "regarded" her as having an impairment, but those arguments are premised on Defendant's assertion that Plaintiff's condition was short-term and therefore did not qualify as a disability. Likewise, Defendant's arguments that Plaintiff does not state a claim for failure to accommodate or for retaliation under the ADA are based on its contention that Plaintiff has not alleged a disability. As indicated, Defendant fails to analyze Plaintiff's condition under the most recent version of the ADA and its regulations. Accordingly, at this stage, the Court is not persuaded that Defendant is entitled to judgment for Plaintiff's ADA claim.

### C. PWDCRA

Plaintiff contends that Defendant violated the PWDCRA by discriminating against her due to a disability, failing to provide her a reasonable accommodation, and retaliating against her for requesting an accommodation.

11

### 1. Discrimination

Article 2 of the PDWCRA prohibits employers from discharging or otherwise discriminating against an individual because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position. Mich. Comp. Laws § 37.1202(1)(b). Defendant argues that the short-term nature of Plaintiff's condition means that she did not qualify as a person with a disability under the PWDCRA.

Plaintiff responds that the PWDCRA contains language similar to that in the ADA and should be interpreted in the same way. But while Michigan courts initially used the ADA as guidance when interpreting the PWDCRA, "Michigan has undertaken no similar amendment to the PWDCRA." *Payment v. Dep't of Transp.*, No. 332827, 2017 WL 3441453, at *2 (Mich. Ct. App. Aug. 10, 2017). Thus, the more recent regulations and case law interpreting the ADA do not necessarily provide guidance for interpreting the PWDCRA.

Under the PWDCRA, a disability is "[a] determinable physical or mental characteristic" that "substantially limits 1 or more . . . major life activities" and that "is unrelated to the individual's ability to perform the duties of a particular job or position[.]" Mich. Comp. Laws § 37.1103(d)(i)(A). It also includes a "history" of such a characteristic as well as "being regarded as" having such a characteristic. *Id.* § 37.1103(d)(ii).

"'Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term effect.'" *Mauer v. Godley*, Nos. 333230, 333874, 2017 WL 4655372, at *5 (Mich. Ct. App. Oct. 17, 2017) (quoting *Lown v. JJ Eaton Place*, 598 N.W.2d 633, 728 (Mich. Ct. App. 1999)). Because Michigan courts consider the duration of an impairment and its permanent or long-term effect, "[a]n impairment cannot be 'substantial' if it is of a merely temporary nature." *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 409 (Mich. Ct.

App. 1999). In addition, "the term 'disability' embodied in the PWDCRA connotes some sense of permanency." *Id.* at 409. "Thus, a disability normally does not include temporary medical conditions, even if those conditions require extended leaves from work." *Dimitrov v. Quest Diagnostics, Inc.*, No. 301304, 2012 WL 555767, at *6 (Mich. Ct. App. Feb. 21, 2012) (quoting *Chiles*, 606 N.W.2d at 408).

Here, Plaintiff does not allege any kind of permanent or long-term impairment that "substantially" limited a major life activity under the PWDCRA. Nor does she allege facts from which to infer that she had a history of such an impairment or that Defendant regarded her as having such an impairment. Before Defendant terminated her, Plaintiff experienced temporary impairments due to a blood clot and hemorrhaging, she received treatment, and then she returned to work without restrictions. When Defendant terminated her, she was recovering from surgery to remove precancerous tissue in her uterus. According to the complaint, Defendant was aware of the nature of her condition and the reason for her continued absence. And it was aware that she expected to recover within a few weeks and would return to work. In these circumstances, Plaintiff does not plausibly allege that Defendant regarded her as having a condition that substantially limited a major life activity, let alone that it terminated her for that reason. Accordingly, Plaintiff does not state a discrimination claim under the PWDCRA.

### 2. Failure to Accommodate

The PDWCRA requires employers to "accommodate a person with a disability for purposes of employment[.]" Mich. Comp. Laws § 37.1102(2). But as noted by Defendant, this provision requires that the person requesting the accommodation is actually disabled, and Plaintiff's allegations indicate otherwise.

13

### 3. Retaliation

Article 6 of the PWDCRA prohibits individuals from retaliating against a person because that person has "opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.1602(a). Here, Plaintiff does not allege that she opposed a violation of the PWDCRA, filed a complaint, or participated in any investigation, proceeding, or hearing under that statute. *See Mitan v. Neiman Marcus*, 613 N.W.2d 415, 417 (Mich. Ct. App. 2000) (dismissing retaliation claim where the allegations did not imply that the plaintiff "either opposed a violation of the HCRA or 'made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing' under the act").

Plaintiff argues that she requested an accommodation, i.e. medical leave, and that this request was protected conduct for purposes of the PWDCRA. However, requests for accommodation are not protected conduct that would give rise to a retaliation claim under the PWDCRA. *See Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 438 (Mich. Ct. App. 2002) ("[A]any request that plaintiff made regarding snow removal did not constitute an opposition to a violation of the PWDCRA, but was merely a request for an accommodation."); *Noe v. Dep't of Treasury*, No. 342374, 2019 WL 452164, at * (Mich. Ct. App. Feb 5, 2019) ("[N]othing in the PWDCRA suggests that requesting an accommodation for one's disability is tantamount to opposing a violation of the PWDCRA, or initiating or participating in a proceeding under the PWDCRA within the meaning of § 602 of the act."). On this issue, Plaintiff relies on non-binding federal court cases extending an interpretation of the ADA to the PWDCRA. But this Court must apply state law as a Michigan court would. Accordingly, Plaintiff fails to state a retaliation claim under the PWDCRA.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendant's motion insofar as it seeks judgment on Plaintiff's claims under the FMLA and the PWDCRA. The Court will deny the motion as to Plaintiff's ADA claim. The Court will enter an order in accordance with this Opinion.


Dated: August 1, 2023            /s/Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 CHIEF UNITED STATES DISTRICT JUDGE